| | | |
|---|---|---|
| FRIENDS OF RUTH & EMILY, INC. | : | Case No.: 1:17-cv-11809-WGY |
| | : | |
| and | : | |
| | : | **DEFENDANTS' MEMORANDUM** |
| JOYCE ROWLEY | : | **OF LAW IN SUPPORT OF ITS** |
| | : | **MOTION TO DISMISS BASED UPON** |
| Plaintiffs, | : | **LACK OF STANDING** |
| v. | : | |
| | : | |
| CITY OF NEW BEDFORD, | : | |
| MASSACHUSETTS | : | |
| | : | |
| Defendant. | : | |

Defendant City of New Bedford submits this Memorandum of Law in response to this Court's July 17, 2018 Order and as a supplement to Defendant's previously submitted pleading in support of its Motion to Dismiss.

## Background Facts

Defendant City of New Bedford owns and operates a municipal zoo ("Buttonwood Park Zoo") which has numerous exhibits, including an elephant exhibit. The zoo staff, with the support of outside veterinarians and consultants,[1] maintains and cares for the two Asian elephants who are the subject of this litigation: Emily and Ruth. According to the facts pled in the Complaint, Emily is a 53 year old elephant who has been held in captivity since the 1960's and lived in the Buttonwood Park Zoo since 1968. Ruth is a 56 year old elephant who has been in captivity since 1961. Ruth has lived in the Buttonwood Park Zoo since being transferred to

---

[1] See, Exhibit 1 – Independent Panel Review of Buttonwood Park Zoo Elephant Program dated July 30, 2015 noting that both Emily and Ruth are "behaviorally healthy" and that they are being cared for by a "Zoo leadership team that is both informed and committed to providing the best welfare possible for Ruth and Emily" finally noting that the "transfer of one or both of these elephants at this stage of their lives would expose the elephants to unjustifiable and undue stress."; Exhibit 2 – Audit Report of the Elephant Program at Buttonwood Park Zoo dated May 3, 2014 noting: "both geriatric elephants are in excellent health" and "both elephants are socially compatible."

the City of New Bedford by the U.S.D.A. in 1986. For the past thirty-two years, Emily and Ruth have shared the elephant exhibit at the Buttonwood Park Zoo.

In this case, Plaintiff is requesting that this Court issue an order requiring that one (or both) of these geriatric elephants who have lived together for more than three decades be relocated to Tennessee against the advice of the world-renowned elephant experts engaged by the City to review the Buttonwood Park Zoo Elephant Program. (Exhibit 1).

At this stage of the litigation – and in accordance with the Order of the Court – Defendant does not ask that the Court consider the merits of Plaintiff's misguided request for relief which that would needlessly "expose the elephants to unjustifiable and undue stress," but instead to focus on the issue of whether (or not) Plaintiff has legal standing to bring this claim.

## Legal Argument - Standing

The Court's July 17, 2018 Order properly raises the issue of Plaintiff's standing. Before proceeding with the case, this Court must initially determine whether (or not) Plaintiff possesses Article III standing to bring this suit against the City of New Bedford. The "irreducible constitutional minimum of standing contains three elements": (1) that the plaintiff suffered an "injury in fact," (2) that there is a "causal connection between the injury and the conduct complained of," and (3) that it is "likely" that the injury will be redressed by the requested relief. Sutliffe v. Epping School Dist., 584 F.3d 314, 325 (1st Cir. 2009); Blake v. Southcoast Health Systems, Inc., 145 F. Supp. 2d 126, 131-32 (D. Mass. 2001). The burden of stating facts sufficient to support standing rests with the party seeking to assert federal jurisdiction. Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998).

**1. Plaintiff has not adequately pled that she has suffered an injury in fact.**

In her Complaint, plaintiff summarily alleges she has developed an "aesthetic, emotional and spiritual relationship" with Ruth and Emily and that "any enjoyment that she has from befriending the elephants is greatly diminished by observing their ongoing suffering from their captivity." Plaintiff further alleges that the unnamed Friends of Ruth and Emily derive "scientific, educational, spiritual, and emotional benefits from observing elephants in the wild and in their native lands." Plaintiff asserts that the only way to redress these alleged injuries is to move the elephants to a facility in Tennessee. Plaintiff has not adequately pled and cannot establish that she has suffered an injury in fact.

In one instance, in another circuit, a District Court found that a particular plaintiff could be sufficiently knowledgeable and experienced in the care of animals that his observations of the mistreatment of those animals in captivity might cause him an injury in fact which would support a finding that standing exists. *See* Animal League Defense Fund, Inc. v. Glickman, 154 F.3d 426 (D.C. Cir. 1998). In Glickman, the Court relied on the fact that the Plaintiff had received specialized training and had significant experience in wildlife rehabilitation such that he had become very familiar with the proper treatment and care for the wildlife in question which allowed him to particularly appreciate the need for proper care. Id. at 431. This specialized knowledge led him, in turn, to incur particularized harm as a result of his observation of the mistreatment of the monkeys being kept at the Long Island Game Farm Park and Zoo. Id. at 432.

Unlike the plaintiff in Glickman, Plaintiff here has not alleged that she has any specialized training in wildlife or animal welfare, rescue, and rehabilitation. This lack of training

is significant because it has resulted in Plaintiff making incorrect assumptions based upon observations of animal behavior that she is not qualified to understand or interpret.

As set forth in the attached exhibits, multiple trained experts familiar with the proper standard of care for elephants have reviewed and analyzed the elephants' behavior which Plaintiff interprets as troubling. These experts explain that the behavior is normal. They further opine that both elephants are "in excellent health" "socially compatible" and "behaviorally healthy." The fact that the Plaintiff incorrectly believes there are potential issues does not create standing. Plaintiff may be well-intended. But, unlike the plaintiff in Glickman who was a knowledgeable, trained and experienced wildlife expert, this Plaintiff does not have the training and/or expertise needed to interpret animal behavior or to identify substandard care. As such, Plaintiff's injuries are conjectural and hypothetical, since the substandard conditions she claims to observe simply do not exist.

Moreover, unlike the plaintiff in Glickman, and unlike the plaintiffs in the seminal United States Supreme Court case on standing, Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), Plaintiff in this case has not pled and she cannot produce evidence that she has observed Asian Elephants in their native lands, such that seeing Ruth and Emily in the zoo "diminish[s] those benefits." In fact, Plaintiff's Complaint does not provide any facts to support an inference that she has, or ever will, travel to observe any Asian Elephants in the wild or in their natural habitats. Given these facts, Plaintiff has not made a sufficient claim of "injury in fact."

**2. Plaintiff has not adequately pled that her alleged injury was caused or that any potential future injury will be caused by Defendants' actions.**

In order to establish constitutional standing, a plaintiff seeking injunctive relief must establish causation, alleging a real and immediate threat of future injury that would be caused by

Defendant's conduct. <u>Connor B. ex rel. Vigurs v. Patrick</u>, 771 F. Supp. 2d 142, 152 (D. Mass. 2011) (*citing* <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 107 n. 8, 1 (1983)).  In reviewing the alleged injury, the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 686 (2009).  A complaint does not suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  <u>Id</u>. at 678  (*citing* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007)).

In the instant Complaint, Plaintiff borrows certain key phrases from case law, summarily alleging that she has an "aesthetic, emotional and spiritual relationship" with the elephants and that she derives "scientific, educational, spiritual, and emotional benefits" from observing the elephants.  But, as noted above, Plaintiff has not and cannot reasonably explain the manner in which the Defendants' conduct in caring for the elephants and maintaining the elephants' habitat – which has been favorably reviewed by all competent experts – has caused or will cause harm to the Plaintiff.

**3. Plaintiff's alleged injuries will not be redressed by the requested relief.**

First, the plaintiff has failed to explain how her alleged aesthetic and emotional injuries will be remedied by the removal of the elephants from the Buttonwood Park Zoo and their relocation to Tennessee.  In <u>Lujan</u>, one of the Plaintiffs alleged that she intended to travel to the site where the endangered species could be located and that she hoped to view the endangered species that lived there, but that she had no "current plans." <u>Lujan</u>, 504 U.S at 564.  In that case, the Supreme Court found that the plaintiffs' intent to "someday" return, without a more "concrete" plan, to visit the places where the endangered animals lived to observe them was not

enough to establish "imminent" or "actual" injury. Id. Ultimately, the Court in Lujan found the plaintiffs lacked standing to bring a claim under the Endangered Species Act because they failed to establish redressible injury. Id.

In this case, Plaintiff has pled even less than the Plaintiff in Lujan. Plaintiff has not alleged that she would travel to Tennessee to view Emily and Ruth in the proposed new location. Nor has Plaintiff stated how she would personally benefit by the proposed relocation which the experts state would needlessly expose the geriatric elephants to "unjustifiable and undue stress" at this stage of their lives.

Second, it is unlikely that the Court would ever grant the extraordinary and dangerous relief sought by Plaintiff in light of a significant legal defect in Plaintiff's claim. Plaintiff's Complaint alleges violations of the Endangered Species Act ("ESA") 16 U.S.C. s. 1538. Yet, Plaintiff's Complaint acknowledges that Emily and Ruth, the two elderly elephants who are the subject of the Complaint, have been held in captivity since the 1960's. The ESA specifically exempts wildlife that was held in captivity prior to the enactment of the ESA and/or prior to the declaration of the animal as part of an endangered species. The act states in relevant part:

> The provisions of subsections (a)(1)(A) and (a)(1)(G) of this section shall not apply to any fish or wildlife which was held in captivity or in a controlled environment on (A) December 28, 1973, or (B) the date of the publication in the Federal Register of a final regulation adding such fish or wildlife species to any list published pursuant to subsection (c) of section 1533 of this title.

16 U.S.C. 1538(b)(1).

Plaintiff's Complaint avers that Asian Elephants were recognized as a protected species when listed in the Federal Register on June 14, 1976. Consequently, whether the Court chooses the earlier December 28, 1973, or the later June 14, 1976 date, as the appropriate date for analysis, the statute exempts Ruth and Emily from ESA coverage since their acknowledged

captivity dates back to the 1960's. For this reason, it is not likely that Plaintiff's unsubstantiated injuries will be redressed by the Court. As such, Plaintiff does not have standing.

## Conclusion

For the foregoing reasons, Defendant City of New Bedford respectfully requests this Court dismiss Plaintiff's claims with prejudice on grounds that Plaintiff lacks standing to bring these claims.

Respectfully submitted,

The Defendant City of New Bedford
By its attorneys,


__s/__John A. Markey_____
JOHN A. MARKEY, JR., ESQUIRE
Moses Smith, Markey & Walsh, LLC
50 Homers Wharf
New Bedford, MA 02740
(508) 993-9711
 BBO # 633540


__s/__Kreg R. Espinola_____
KREG R. ESPINOLA
Assistant City Solicitor
City of New Bedford
133 William Street
New Bedford, MA  02740
(508) 979-1460
BBO # 649389

August 16, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2018, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by regular U.S. Mail upon: Joyce Rowley and The Friends of Ruth and Emily at Post Office Box 50215, New Bedford, MA 02745