UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
JOYCE ROWLEY,                     )
                                  )
          Plaintiff,              )
                                  )
          v.                      )        CIVIL ACTION
                                  )        NO. 17-11809-WGY
CITY OF NEW BEDFORD,              )
                                  )
          Defendant.              )
                                  )
```

YOUNG, D.J.                                September 25, 2018

### MEMORANDUM AND ORDER

## I.   INTRODUCTION

Former plaintiff Friends of Ruth & Emily, Inc. ("Friends")
filed suit against the defendant City of New Bedford ("New
Bedford"), alleging that New Bedford's city zoo committed an
unlawful taking under the Endangered Species Act.  After New
Bedford moved to dismiss the complaint for lack of proper legal
representation, Joyce Rowley ("Rowley") substituted herself as
plaintiff, rendering the issue moot.  ECF Nos. 18, 23.  This
Court withheld judgment on the motion, however, asking the
parties instead to brief the issue of standing.  ECF No. 30.
Satisfied that Rowley does indeed have the requisite standing to

maintain this suit at this stage of the litigation, the Court now DENIES New Bedford's motion to dismiss.

## A.    Procedural History

On September 21, 2017, Friends filed a complaint against New Bedford in this Court under its federal question jurisdiction. Compl. Decl. & Inj. Relief ("Compl.") ¶ 25. New Bedford moved to dismiss the complaint on October 16, on the basis that Rowley, the non-attorney founder and president of Friends, could not represent Friends in a federal lawsuit. Mot. Dismiss Pl.'s Compl. ("Mot. Dismiss"), ECF No. 7. Friends opposed the motion, Resp. Opp'n Def.'s Mot. Dismiss ("Opp'n Mot. Dismiss"), ECF No. 14, and moved for a preliminary injunction on December 12, Mot. Prelim. Inj., ECF No. 16. That day, this Court heard oral argument on the motion to dismiss and granted a conditional dismissal, allowing Friends thirty days to retain proper counsel. See ECF No. 18.

On February 12, 2018, Rowley moved to intervene, which this Court allowed as a motion to substitute the plaintiff. See ECF Nos. 21, 23. Rowley then renewed Friends' previous motion for a preliminary injunction. See ECF Nos. 27, 28. Concerned about Rowley's standing to maintain suit, this Court requested briefing on the issue, which both parties duly provided. See Pl.'s Br. Supp. Pl.'s Standing ("Pl.'s Mem."), ECF No. 31; Def.'s Mem. Law Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 33.

**B.    Facts Alleged**

Rowley alleges maltreatment of two Asian elephants, named Ruth and Emily, at the Buttonwood Park Zoo (the "Zoo") in New Bedford.  Compl. ¶¶ 7-8.  Rowley is the founder and president of Friends, a "nonprofit organization and [] public charity" consisting of "dozens" of members supporting the effort to shut down the Zoo's elephant exhibit and transfer Ruth and Emily to an elephant sanctuary in Tennessee.  Id. ¶¶ 2, 13.  Rowley is also a member of the Buttonwood Park Zoological Society and visits the Zoo on a "near daily basis" to observe Ruth and Emily.  Id. ¶ 14.  Rowley alleges that she has formed "an aesthetic, emotional, and spiritual relationship with Ruth and Emily over the years."  Id. ¶ 15.

Rowley alleges that the Zoo has harmed Ruth and Emily in several ways, such as by chaining their legs to restrain them overnight; failing to protect Ruth from attacks by Emily (it is allegedly "well documented" that the two elephants do not get along); housing them in inadequate facilities; failing to provide the elephants with sufficient socialization opportunities; and failing to provide adequate veterinary care. Id. ¶¶ 36-65.  Rowley claims that the Zoo's treatment of Ruth and Emily violates Section 9 of the Endangered Species Act, which prohibits the "taking" of any endangered species and the possession of any endangered species unlawfully taken.  Id.

[3]

¶¶ 78-79.  Rowley requests that this Court declare that the Zoo's treatment of Ruth and Emily violates the Endangered Species Act and enjoin the Zoo from committing any further violations.  Id. at 25.

## II.  LEGAL STANDARD

As Justice Scalia explained in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992):

> [O]ur cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-61 (citations omitted) (first quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990), then quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976), then quoting Simon, 426 U.S. at 38, 43).  While "[t]he party invoking federal jurisdiction bears the burden of establishing these elements," the severity of this burden varies depending on the stage of litigation.  Id. at 561.  "At the pleading stage," for example, "general factual allegations of injury resulting from the defendant's conduct may suffice."  Id.

Here, Rowley brings her suit under the Endangered Species Act, 16 U.S.C. §§ 1531-44, which expressly authorizes citizen suits for injunctive relief. See id. § 1540(g)(1). Thus, she may bring such a suit if she has standing. Since this case has not proceeded beyond the motion to dismiss stage, Rowley "must clearly allege facts demonstrating standing; [this Court] then construe[s] those facts and reasonable inferences drawn from them in [her] favor." Animal Welfare Inst. v. Martin, 623 F.3d 19, 25 (1st Cir. 2010).

## III. ANALYSIS

### A. Injury in Fact

While "there is ordinarily little question" of injury when a plaintiff is herself the object of the government action she challenges, in certain cases, such as those arising under the Endangered Species Act, the plaintiff's "asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else." Lujan, 504 U.S. at 561-62. In these cases, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." Id. (quoting Allen v. Wright, 468 U.S. 737, 758 (1984)).

The Supreme Court has noted that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." Id. at 562-63. A plaintiff must show, however, that she is herself

suffering an injury to that interest -- in other words, that she is "'directly' affected apart from [her] 'special interest in th[e] subject.'"   Id. at 563 (quoting Sierra Club v. Morton, 405 U.S. 727, 735, 739 (1972)).   In Sierra Club, where this idea was articulated in the similar environmental protection context, the plaintiff sought a declaratory judgment that a proposed development through part of Sequoia National Park violated federal law governing the preservation of natural parks, forests, and game refuges.   405 U.S. at 730.   The Supreme Court held that the plaintiff failed to establish injury in fact because, while "[t]he alleged injury will be felt directly . . . by those who use [the area], and for whom the aesthetic and recreational values of the area will be lessened," the plaintiff "failed to allege that it or its members would be affected in any of their activities or pastimes by the . . . development." Id. at 735.   The plaintiff did not assert "that its members use [the area] for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions," and its "mere 'interest in a problem,' no matter how longstanding," was not sufficient to confer standing.   Id. at 735, 739.

The Supreme Court again rejected claims of injury in fact in Lujan, where an organization challenged a federal regulation interpreting the Endangered Species Act not to apply to agency

[6]

actions taken in foreign nations. 504 U.S. at 558. The plaintiff relied on affidavits from two of its members, each stating that the member had traveled to a foreign country (one to Egypt, the other to Sri Lanka) on one occasion and observed the habitat of an endangered species, intended to do so again, and would suffer harm from the reduced chance of observing the species on that future visit due to the agency action. See id. at 563-64. The Supreme Court explained, "[t]hat the women 'had visited' the areas of the projects before the projects commenced proves nothing," and "[s]uch 'some day' intentions" to return, "without any description of concrete plans, or indeed even any specification of when the some day will be[,] do not support a finding of the 'actual or imminent' injury that our cases require." Id. at 564.

In so holding, the Supreme Court rejected the "animal nexus" approach, under which "anyone who has an interest in studying or seeing the endangered animals anywhere on the globe has standing," and the "vocational nexus" approach, under which "anyone with a professional interest in such animals" has standing. Id. at 566. Justice Scalia remarked:

> Under these theories, anyone who goes to see Asian elephants in the Bronx Zoo, and anyone who is a keeper of Asian elephants in the Bronx Zoo, has standing to sue because the Director of the Agency for International Development (AID) did not consult with the Secretary regarding the AID-funded project in Sri Lanka. This is beyond all reason. . . . It is clear

[7]

that the person who observes or works with a
particular animal threatened by a federal decision is
facing perceptible harm, since the very subject of his
interest will no longer exist.  It is even plausible -
- though it goes to the outermost limit of
plausibility -- to think that a person who observes or
works with animals of a particular species in the very
area of the world where that species is threatened by
a federal decision is facing such harm, since some
animals that might have been the subject of his
interest will no longer exist.  It goes beyond the
limit, however, and into pure speculation and fantasy,
to say that anyone who observes or works with an
endangered species, anywhere in the world, is
appreciably harmed by a single project affecting some
portion of that species with which he has no more
specific connection.

Id. at 566-67 (citing Japan Whaling Ass'n v. American Cetacean

Soc'y, 478 U.S. 221, 231, n.4 (1986)).

     By contrast, the plaintiffs in Friends of the Earth, Inc.

v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167

(2000), established standing for their claims concerning a

facility's unlawful discharge of pollutants into a river.

There, the Supreme Court held that the plaintiffs adequately

demonstrated injury in fact with evidence that they lived near

the facility and would have liked to fish, hike, wade, camp, or

canoe near or in the river, but refrained from doing so for fear

that the water contained harmful pollutants.  Id. at 181-83.  It

noted that Sierra Club "held that environmental plaintiffs

adequately allege injury in fact when they aver that they use

the affected area and are persons 'for whom the aesthetic and

recreational values of the area will be lessened' by the

challenged activity." Id. at 183. The Friends of the Earth
Court went on to distinguish the plaintiffs' conditional
statements (that they would use the river were it not for the
pollution) from "the speculative 'some day intentions'" in
Lujan. Id. at 184 (quoting Lujan, 504 U.S. at 564).

The First Circuit followed the example set by Friends of
the Earth in Animal Welfare Institute v. Martin, 623 F.3d 19, 25
(1st Cir. 2010), where it concluded that standing requirements
were satisfied. There, the plaintiff organizations challenged
Maine's trapping regulations as harmful to Canada lynx in the
area. Id. at 22-23. The First Circuit had no trouble
concluding that the plaintiffs had alleged injury in fact,
observing:

> Plaintiffs' affidavits from members who are Maine
> residents assert the members frequently visit wildlife
> refuges and parks in Maine to try to observe lynx and
> other wildlife species. This "desire to use or
> observe an animal species . . . is undeniably a
> cognizable interest for purpose of standing." The
> members also allege a cognizable injury to this
> interest: that Maine's trapping regulations . . .
> interfere with the Canada lynx's natural state and may
> increase the animals' risk of death, reducing the
> likelihood that the members will observe Canada lynx
> in their natural state on future visits.

Id. at 25 (quoting Lujan, 504 U.S. at 562-63). Similarly, in
Strahan v. Coxe, 939 F. Supp. 963 (D. Mass. 1996) (Woodlock,
J.), vacated in part on other grounds, 127 F.3d 155 (1st Cir.
1997), Judge Woodlock held that the plaintiff had shown injury

in fact from his testimony that "he regularly observes whales in
Massachusetts waters," since "[r]egular observation of
endangered whales in Massachusetts waters is a cognizable
interest for standing purposes." Id. at 978.  Judge Woodlock
also explained that the plaintiff's affidavits, in which he
testified that he "routinely go[es] 'whale watching' in New
England," is a "conservation biologist specializing in the
conservation and recovery of endangered species," and "is
engaged in scientific research on the Northern Right whale,"
separately sufficed to support a finding that the plaintiff had
a cognizable interest.  Id.

Another relevant case from this circuit determining
allegations of injury in fact to be insufficient is not
inconsistent with these opinions.  In Citizens to End Animal
Suffering & Exploitation, Inc. v. New England Aquarium, 836 F.
Supp. 45 (D. Mass. 1993) (Wolf, J.), the plaintiffs alleged that
the transfer of a particular dolphin named Kama from the New
England Aquarium caused their members to suffer harm from the
deprivation of the opportunity to observe and study Kama.  Id.
at 50-51.  Judge Wolf held that the plaintiffs had not
demonstrated injury in fact from the affidavits of two of their
members stating that they "attended dolphin shows and saw
dolphins on public display [at the Aquarium] several times"
while Kama was at the Aquarium.  Id. at 52.  Judge Wolf noted

[10]

that the affiants failed to state "either that they have
returned to the Aquarium and have suffered injury because of
Kama's absence, or intend to return in the near future." Id.
Further, they did not "state that they ever observed Kama in
particular, as opposed to dolphins in general, at the Aquarium."
Id. These failures "belie[d] any possible assertion that either
of them had established a relationship with Kama such that, as a
result of his transfer, 'the very subject of [the member's]
interest will no longer exist.'" Id. (quoting Lujan, 504 U.S.
at 566).

The above precedent persuades this Court that Rowley has
sufficiently alleged injury in fact. Rowley makes the following
relevant allegations in her complaint:

> 14. [Rowley] has resided in New Bedford, MA for over
> five years and in the Zoo's market area for 11 years. She
> is also a member of the Buttonwood Park Zoological Society
> located at the Zoo. Ms. Rowley visited the Zoo on a near
> daily basis for the past three and one-half years to
> observe Ruth and Emily and communicates with them
> regularly. Prior to that she visited the Zoo on a weekly
> and monthly basis since 2010.

> 15. Ms. Rowley has developed an aesthetic, emotional,
> and spiritual relationship with Ruth and Emily over the
> years. Any enjoyment she has from befriending the
> elephants is greatly diminished by observing their ongoing
> suffering from their captivity.

> 16. Plaintiff Friends[1] have demonstrated, protested,
> and handed out educational literature at the Zoo . . . to

---

[1] Given that Rowley has alleged that she is the founder and
president of Friends, Compl. ¶ 9, and is now the substituted
plaintiff, the Court considers it reasonable to infer that she

inform and educate the public about Ruth and Emily's living
conditions over the past five years.

17.   Plaintiff Friends' members have voiced concerns
through letters to the local newspapers, social media and
email about Ruth's and Emily's health and living conditions
at the Zoo.

. . .

19.   Plaintiff Friends were so concerned that they
raised $800 in 2015 to have "Ele-coats" handmade and
shipped to the Zoo for Ruth and Emily to wear in the
winter, when they are forced to stand on exhibit in snow,
ice and freezing temperatures.

20.   Plaintiff Friends were so concerned about the
lack of medical care for Ruth that they raised
approximately $2,000 to bring a veterinarian with 40 years
of elephant expertise to the Zoo in 2015. . . .

Compl. ¶¶ 14-17, 19-20.  Rowley's allegations that she lives in

New Bedford, is a member of the Zoo's Zoological Society, and

observes and communicates with Ruth and Emily on a "near daily

basis" are akin to the evidence relied on by the courts in

Friends of the Earth, Animal Welfare Institute, and Strahan to

establish injury in fact.  While she does not explicitly state

that she intends to return to the Zoo, construing all inferences

in her favor (as is warranted at this stage), one may reasonably

conclude from the occasional use of present tense and overall

tenor of her allegations that she has "concrete plans" to

continue her frequent visits to the Zoo, rather than only "'some

---

was involved in the activities attributed to Friends in the
complaint.

day' intentions" to return.  Lujan, 504 U.S. at 564; see also

Hardaway v. District of Columbia Hous. Auth., 843 F.3d 973, 978

(D.C. Cir. 2016) ("constru[ing] liberally" pro se plaintiffs'

complaint to determine that it alleged injury in fact).

    Rowley also alleges that she has a relationship with and an

ongoing interest in observing these particular elephants, rather

than simply alleging that she has observed some elephants at the

Zoo.  Cf. Citizens to End Animal Suffering & Exploitation, Inc.,

836 F. Supp. at 52 ("More significantly, the affiants have not

alleged the particular relationship with Kama necessary to cause

them to be harmed by his absence even if they plan to return to

the Aquarium.").  Rowley's complaint alleges that the Zoo's

maltreatment of Ruth and Emily has injured this interest because

"[a]ny enjoyment she has from befriending the elephants is

greatly diminished by observing their ongoing suffering from

their captivity."  Compl. ¶ 15; see Animal Legal Def. Fund, Inc.

v. Glickman, 154 F.3d 426, 433 (D.C. Cir. 1998) (en banc)

(observing that "people have a cognizable interest in 'view[ing]

animals free from . . . inhumane treatment'" (quoting Humane

Soc'y v. Babbitt, 46 F.3d 93, 99 n.7 (D.C. Cir. 1995))).  Her

alleged injury thus appears most similar to the one that Justice

Scalia indicated would pass constitutional muster.  See Lujan,

504 U.S. at 566 ("It is clear that the person who observes or

works with a particular animal threatened by a federal decision

is facing perceptible harm, since the very subject of his interest will no longer exist.").

Overlooking this circuit's precedent on the matter, New Bedford relies on Animal Legal Defense Fund, Inc. v. Glickman, a case from the District of Columbia Circuit, to argue that Rowley has not adequately established injury in fact because she has not alleged that she has any specialized training in wildlife or animal welfare. Def.'s Mem. 2-3.   In Glickman, the court affirmed the ruling that an individual plaintiff alleging "aesthetic injury" from observing captive animals living under inhumane conditions had standing.   154 F.3d at 429.   New Bedford maintains that the Glickman court "relied on the fact that the [p]laintiff had received specialized training and had significant experience in wildlife rehabilitation" in finding that he had suffered injury in fact.   Def.'s Mem. 2.   Yet Glickman does not reference, much less rely on, this fact in its reasoning at all.   See id. at 431-38.   New Bedford appears to have concocted this theory from the court's factual summary of the plaintiff's affidavit, which merely mentions that the plaintiff had training in wildlife rehabilitation and had worked for various animal relief and rescue organizations.   Id. at 429. Nowhere in Glickman's thorough analysis of the applicable case law does the court even hint that a plaintiff's specialized training or expertise is relevant to establishing injury in

fact, and New Bedford does not point this Court to any other case so stating.

In fact, the Glickman court's analysis only bolsters this Court's conclusion that Rowley has shown injury in fact. In determining that the plaintiff's allegations "solidly establish injury in fact," the court explained that the plaintiff "enjoy[s] seeing [animals] in various zoos and other parks near [his] home" due to his "familiarity with and love of exotic animals, as well as for recreational and educational purposes and because [he] appreciate[s] these animals' beauty." Id. at 431. Like Rowley, the Glickman plaintiff visited the zoo in question "regularly" and "developed an interest . . . in seeing these particular animals living under humane treatment." Id. The court explained that these allegations established "far more than an abstract, and uncognizable interest in seeing the law enforced." Id. at 432.

New Bedford next argues that Rowley has not produced evidence that she has observed or will observe Asian elephants in their native lands. Def.'s Mem. 3. This argument suffers from a similar flaw in that it imports a nonexistent requirement into the injury in fact analysis. The fact that some cases have involved plaintiffs who have based their theories of injury on the observation of a species in its natural habitat, see, e.g., Lujan, 504 U.S. at 563-64, does not compel the conclusion that

[15]

all plaintiffs must demonstrate that they have observed, or will observe, a species in its natural habitat. None of the cases known to this Court require such a showing, and New Bedford does not offer any that do. Rowley has sufficiently established injury in fact.

### B.   Causation

The second requirement of standing is "a causal connection between the injury and the conduct complained of." Lujan, 504 U.S. at 560. That is, Rowley must show "that the injury is fairly traceable to [New Bedford's] allegedly unlawful actions." Animal Welfare Inst., 623 F.3d at 25 (quoting Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 26 (1st Cir. 2007)). In her complaint, Rowley alleges that the Zoo:

> (1) keep[s] Ruth & Emily in a facility . . . that interferes with normal behavior; (2) confin[es] them in a small enclosure and even smaller "barn" with bars and hard substrates that cause physical and psychological harm; (3) prevent[s] them from having appropriate social interactions with each other and other elephants; (4) fail[s] to protect Ruth from Emily's aggression which causes Ruth physical and psychological harm; (5) fail[s] to provide adequate veterinary care which harms both Ruth and Emily; (6) fail[s] to provide proper food and enrichment.

Compl. ¶ 10. New Bedford claims that because the Zoo has in fact not mistreated the elephants, Rowley cannot show that its conduct has caused any harm. Def.'s Mem. 3-4. Whether or not Rowley will ultimately succeed in proving her allegations of harm, however, is irrelevant at this stage. Rowley has

sufficiently alleged that the Zoo's actions cause the harm
complained of by "interfer[ing] with [Ruth and Emily's] natural
state" and "increas[ing] [their] risk of death." Animal Welfare
Inst., 623 F.3d at 25.

C.    **Redressability**

Finally, Rowley must show that "it [is] likely, as opposed
to merely speculative, that the injury will be redressed by a
favorable decision." Id. (quoting Impson, 503 F.3d at 26).
This requirement has been held to have been satisfied through
requests for injunctive relief. See, e.g., id. at 26; Strahan,
939 F. Supp. at 979. Similarly, here, Rowley requests a
declaratory judgment that the Zoo's treatment of Ruth and Emily
violates the Endangered Species Act, as well as injunctions
prohibiting the Zoo from euthanizing the elephants and
continuing to violate the Endangered Species Act.[2]  Compl. at 25.
Were the Zoo to improve its facilities for Ruth and Emily,
protect them in the appropriate manner, and provide adequate
veterinary care and nutrition, it is likely that Ruth and Emily
would suffer less harm and face a decreased risk of illness or
death.  Thus, a favorable decision is likely to redress Rowley's

---

[2] Rowley has also recently moved for a preliminary
injunction based on allegations of Ruth's declining health,
seeking a court order enjoining the Zoo's continued allegedly
unlawful possession of Ruth and mandating Ruth's assessment by
an expert. Mem. Supp. Prelim. Inj. 6, ECF No. 28.

injury.  See Glickman, 154 F.3d at 443 ("Tougher regulations [in
compliance with federal law] would either allow [the plaintiff]
to visit a more humane Game Farm or, if the Game Farm's owners
decide to close rather than comply with higher legal standards,
to possibly visit the animals he has come to know in their new
homes within exhibitions that comply.").

New Bedford contends that Rowley has not established
redressability because her complaint proposes the relocation of
Ruth and Emily to a sanctuary in Tennessee, yet she "has not
alleged that she would travel to Tennessee" or "stated how she
would personally benefit by the proposed relocation."  Def.'s
Mem. 5.  This Court need not determine whether such allegations
are necessary, however, because while Rowley's complaint at
times urges this relocation, it does not actually seek this
relief.  Instead, it requests that this Court enjoin the Zoo's
alleged unlawful taking, possession, and mistreatment of the
elephants and declare its practices unlawful.  See Compl. at 25.
Further, there has been no indication that the elephants' fate
rests in part with agencies not involved in this lawsuit or
government initiatives outside New Bedford's control.  See
Lujan, 504 U.S. at 568-71.  The Zoo is the custodian of these
two elephants, and New Bedford, the Zoo's owner, is a party to
this case.  If Rowley prevails, the Court may order New Bedford

to take certain actions that would likely provide full relief to Rowley's injury.

New Bedford next argues that Rowley's injuries are unlikely to be redressed by the Court because Ruth and Emily fall into an exemption from the Endangered Species Act's requirements. Def.'s Mem. 5-6. The Endangered Species Act does indeed exempt certain wildlife from some of its provisions:

> The provisions of subsections (a)(1)(A) and (a)(1)(G) of this section shall not apply to any fish or wildlife which was held in captivity or in a controlled environment on (A) December 28, 1973, or (B) the date of the publication in the Federal Register of a final regulation adding such fish or wildlife species to any list published pursuant to subsection (c) of section 1533 of this title: <u>Provided</u>, That such holding and any subsequent holding or use of the fish or wildlife was not in the course of a commercial activity.

16 U.S.C. § 1538(b)(1). New Bedford asserts that because Ruth and Emily have been held in captivity prior to either of the applicable dates, the statute exempts them from coverage.

This argument might carry weight if Rowley were claiming violations of subsections (a)(1)(A) or (a)(1)(G) of section 1538. Her complaint, however, alleges violations of subsections (a)(1)(B), prohibiting the unlawful "taking" of an endangered species, and (a)(1)(D), prohibiting the possession of such an unlawfully taken species. Compl. ¶ 9. The statute's plain language indicates that the exemption does not apply to these subsections. See <u>American Soc'y for the Prevention of Cruelty</u>

to Animals v. <u>Ringling Bros. & Barnum & Bailey Circus</u>, 502 F.
Supp. 2d 103, 108-09 (D.D.C. 2007) (analyzing the statute's
language and congressional intent to conclude that the exemption
applies only to subsections (a)(1)(A) and (a)(1)(G)).
Consequently, this statutory exemption does not disturb the
Court's conclusion that Rowley's claims are redressable.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Rowley has
sufficiently demonstrated standing to pursue her claims.   New
Bedford's motion to dismiss, ECF No. 7, is DENIED.   This case
has already dragged on far too long.   Since Rowley seeks
preliminary injunctive relief, it is appropriate in this
instance that such hearing be joined with trial on the merits
pursuant to Federal Rule of Civil Procedure 65(a).   The Court
will convene a status conference as soon as possible to set an
early trial date.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

[20]